Raul Perez (SBN 174687)
RPerez@InitiativeLegal.com
Rebecca Labat (SBN 221241)
RLabat@InitiativeLegal.com
Miriam L. Schimmel (SBN 185089)
MSchimmel@InitiativeLegal.com
David Cheng (SBN 240926)
DCheng@InitiativeLegal.com
Katherine Den Bleyker (SBN 257187)
KDenBleyker@InitiativeLegal.com
Initiative Legal Group APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067
Telephone:     (310) 556-5637
Facsimile:      (310) 861-9051

Attorneys for Plaintiff Jimmy Ellison and
Lead Counsel for the Purposes of Discovery

[*Additional counsel on following page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re : AutoZone, Inc., Wage and Hour Employment Practices Litigation | Case No.:  3:10-md-02159-CRB |
| | Hon. Charles R. Breyer |
| | **CLASS ACTION & ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE §§ 2698 *ET SEQ*.** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION** |
| | Date:           November 30, 2012<br>Time:          10:00 a.m.<br>Place:         Courtroom 6, 17th Floor |

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

1    Richard E. Quintilone (SBN 200995)
     Quintilone and Associates
2    22974 El Toro Road, Suite 100
     Lake Forest, California 92630
3    Telephone:    (949) 458-9675
     Facsimile:    (949) 458-9679

4
     Attorneys for Plaintiff William Doland
5

6    Morris Nazarian (SBN 230275)
     Law Offices of Morris Nazarian
7    1875 Century Park East, Suite 1345
     Los Angeles, California 90067
8    Telephone:    (310) 284-7333
     Facsimile:    (310) 284-7332
9
     Attorneys for Plaintiff Lynnetta Ellison
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

1

**TABLE OF CONTENTS**

2

3   SUMMARY OF ARGUMENT ................................................................................... v

4   I.      INTRODUCTION ..................................................................................... 1

5   II.     FACTS AND PROCEDURE ..................................................................... 3

6           A.      Defendant Employs Tens Of Thousands Of Hourly-Paid

7                   Employees ...................................................................................... 3

8           B.      Plaintiffs Seek To Certify Three Proposed Subclasses ................... 3

9   III.    ARGUMENT ............................................................................................ 5

10          A.      The Standard For Class Certification Is Set Forth Under Rule 23 ...... 5

11          B.      Each Of The Subclasses Has Predominant Common Questions Of

12                  Fact Or Law .................................................................................... 6

13                  1.      Common Questions of Fact or Law Predominate the Rest Break

14                          Subclass ............................................................................ 6

15                  2.      Common Questions of Fact or Law Predominate the Store

16                          Opening Off-the-Clock Subclass ...................................... 10

17                  3.      Common Questions of Fact or Law Predominate the On-Duty

18                          Meal Period Subclass ........................................................ 14

19          C.      Plaintiffs Are Typical Of The Proposed Subclasses They Seek To

20                  Represent ...................................................................................... 18

21          D.      Adequacy Is Satisfied As To All Subclasses ................................. 20

22          E.      Plaintiffs' Subclasses Are Ascertainable and Are Sufficiently

23                  Numerous ...................................................................................... 21

24          F.      Class Treatment Is Superior To A Multitude Of Individual

25                  Lawsuits Since Plaintiffs' Claims Are Capable of Being

26                  Adjudicated Via Common Proof ................................................... 21

27  IV.     CONCLUSION ....................................................................................... 23

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA

ELLISON'S MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alba v. Papa John's USA, Inc.*, No. CV 05-7487, 2007 U.S. Dist. LEXIS 28079

(C.D. Cal. Feb. 7, 2007) ...................................................................................vi, 9

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ...................................22

*Bibo v. Federal Express*, No. C 07-2505, 2009 U.S. Dist. LEXIS 37597 (N.D.

Cal. Apr. 21, 2009)....................................................................................... vii, 13

*Bickley v. Schneider National Carriers, Inc.*, No. C 08-05806 (N.D. Cal. Sep. 7,

2012) .........................................................................................................vi, 9

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)...................................................5

*Cardona v. Worldwide Techservices LLC*, 2012 U.S. App. LEXIS 16906 (9th

Cir. July 11, 2012)........................................................................................vi, 8

*Clayton v. Knight Transportation, Inc.*, No. 11cv0735, 2012 U.S. Dist. LEXIS

98459 (E.D. Cal. Jul. 16, 2012) .........................................................................16

*Delagarza v. Tesoro Ref. & Mktg. Co.*, No. C-08-5803, 2011 U.S. Dist. LEXIS

101127 (N.D. Cal. Sep. 8, 2011) ..............................................................vii, 16, 17

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010)............................5

*Gardner v. Shell Oil Co.*, 2011 U.S. Dist. LEXIS 44851 (N.D. Cal. April 21,

2011) ....................................................................................................17

*Gilmer v. Alameda-Contra Costa Transit Dist.*, 2011 U.S. Dist. LEXIS 126845

(N.D. Cal. Nov. 2, 2011) ................................................................................22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......................................21

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ....................................5

*Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) .............................5

*Kurihara v. Best Buy Co., Inc.*, No. C 06-01884, 2007 U.S. Dist. LEXIS 64224

(N.D. Cal. Aug. 30, 2007) ......................................................................6, 9, 13

*Otsuka v. Polo Ralph Lauren Co.*, 251 F.R.D. 439 (N.D. Cal. 2008) ....................13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

*Schulz v. QualServ.*, No. 09-CV-17, 2012 U.S. Dist. LEXIS 58561 (S.D. Cal.

Apr. 26, 2012) ...............................................................................................vi, 8, 9

*United Steel v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) ............................................5

*York v. Starbucks Corp.*, No. CV 08-07919, 2011 U.S. Dist. LEXIS 155682

(C.D. Cal. Nov. 23, 2011) ................................................................................ viii, 17

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ......................................5

## STATE CASES

*Arias v. Super. Ct.*, 46 Cal. 4th 969 (2009)..................................................................5

*Brinker v. Superior Court*, 53 Cal. 4th 1004 (2012) .........................................*passim*

*Bufil v. Dollar Financial Group, Inc.*, 162 Cal. App. 4th 1193 (2008)....................................8

*Cal. Hotel & Motel Ass'n v. Ind. Welfare Comm'n*, 25 Cal. 3d 200 (1979)..............................6

*Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949 (2005)........................................22

*Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524 (2008)......................................8

*Hernandez v. Mendoza*, 199 Cal. App. 3d 721 (1988)......................................................22

*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010)........................................vi, 8

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000) ..................................... vii, 12

*Small v. Super. Ct.*, 148 Cal. App. 4th 222 (2007) ......................................................6

## FEDERAL STATUTES

Fed. R. Civ. P. 23 ..................................................................................... viii, 5

Fed. R. Civ. P. 23(a) .........................................................................................5, 20

Fed. R. Civ. P. 23(a)(1) .....................................................................................21

Fed. R. Civ. P. 23(a)(4) .....................................................................................20

Fed. R. Civ. P. 23(b) .........................................................................................5

Fed. R. Civ. P. 23(b)(3)....................................................................................5, 21

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA
ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

STATE STATUTES

8 Cal. Code of Regs. § 11070, subd. 1 (IWC Wage Ord. No. 7) .........................................6, 18

8 Cal. Code of Regs. § 11070, subd. 2(G) (IWC Wage Ord. No. 7) .......................................12

8 Cal. Code of Regs. § 11070, subd. 4(B) (IWC Wage Ord. No. 7) .......................................12

8 Cal. Code of Regs. § 11070, subd. 11(A) (IWC Wage Ord. No. 7) ..............................14, 15

8 Cal. Code of Regs. § 11070, subd. 11(B) (IWC Wage Ord. No. 7) .....................................15

8 Cal. Code of Regs. § 11070, subd. 11(C) (IWC Wage Ord. No. 7) .....................................15

8 Cal. Code of Regs. § 11070, subd. 11(D) (IWC Wage Ord. No. 7) .....................................15

8 Cal. Code of Regs. § 11070, subd. 12(A) (IWC Wage Ord. No. 7) .......................................7

8 Cal. Code of Regs. § 11070, subd. 12(B) (IWC Wage Ord. No. 7) .......................................7

Cal. Bus. & Prof. Code § 17200 *et seq.* (Unfair Comp. Law (UCL)) ........................... viii, 3, 5

Cal. Lab. Code § 201 .......................................................................................................... viii, 5

Cal. Lab. Code § 202 .......................................................................................................... viii, 5

Cal. Lab. Code § 203 ............................................................................................................... viii

Cal. Lab. Code § 204 .......................................................................................................... viii, 5

Cal. Lab. Code § 226(a) ..................................................................................................... viii, 5

Cal. Lab. Code § 226.7(b) ....................................................................................................*passim*

Cal. Lab. Code § 510 ................................................................................................................ vii

Cal. Lab. Code § 512 ..........................................................................................................14, 15

Cal. Lab. Code § 1194 .............................................................................................................. vii

Cal. Lab. Code § 1197.1 ........................................................................................................... vii

Cal. Lab. Code § 1198 .............................................................................................................. vii

Cal. Lab. Code § 2698 *et seq.* (Priv. Atty's. Gen. Act (PAGA)) .................................. viii, 3, 5

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA
ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

**SUMMARY OF ARGUMENT**

Plaintiffs Jimmy Ellison, William Doland, and Lynnetta Ellison ("Plaintiffs") seek to certify three subclasses of Defendant AutoZone, Inc.'s ("Defendant" or "AutoZone") current and former employees. The three subclasses consist of those who were (1) subject to rest break violations; (2) worked off-the-clock without pay; and (3) subject to meal break violations. Because liability as to all subclasses can be established by common proof, class certification is appropriate.

With respect to the Rest Break Subclass, the California Supreme Court has confirmed that two rest breaks must be authorized for work periods of more than six hours, and one rest break authorized for work periods of at least 3.5 hours. *Brinker v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012). Yet, Defendant's written policy fails to authorize two rest breaks for employees working periods of between 6 and 8 hours, and one rest break for employees working periods of between 3.5 and 4 hours. Defendant's own designee testified that it uniformly implemented this rest break policy at all its stores in California. Particularly where a facial rest break violation is alleged, and the allegation is premised on a written company policy like the one here, federal and state courts have certified rest break subclasses akin to the one proposed here. *See, e.g.*, *Schulz v. QualServ.*, No. 09-CV-17, 2012 U.S. Dist. LEXIS 58561, *2 (S.D. Cal. Apr. 26, 2012), *pet. app. granted Cardona v. Worldwide Techservices LLC*, 2012 U.S. App. LEXIS 16906 (9th Cir. Jul. 11, 2012) (applying *Brinker* to certify rest break subclass where only 1 rest break provided); Order on Motion for Class Certification at 9-10, 12-13, *Bickley v. Schneider National Carriers, Inc.*, No. C 08-05806 (N.D. Cal. Sep. 7, 2012), attached as Ex. X to Schimmel Decl. (certifying rest break claims based on written policy that, on its face, violated California law); *Alba v. Papa John's USA, Inc.*, No. CV 05-7487, 2007 U.S. Dist. LEXIS 28079, *10 (C.D. Cal. Feb. 7, 2007) (Feess, J.) (same); *Brinker*, 53 Cal. 4th at 1033 (uniform, non-compliant rest break policy amenable to class treatment) (citing *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1299-1305 (2010)).

The Store Opening Off-the-Clock Subclass is also ideally suited for class treatment. Defendant's store-opening policy, enacted across all California stores, required all members of

Page v

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    the Class working opening shifts to be present to open the store and perform certain other

2    tasks before clocking in.  Even if they wished to, because it is the technology systems'

3    registers that house the clock-in and clock-out programs, Defendant's employees could not

4    clock in before performing these opening tasks.

5           Determining class-wide liability will thus entail testing whether AutoZone's store-

6    opening policy violates California Labor Code sections 510, 1194, 1197.1 and 1198.  The sole

7    difference among members of the Store Opening Off-the-Clock Subclass will be in their

8    damages, which as a matter of black-letter class action jurisprudence cannot be a bar to class

9    certification.

10          Plaintiffs' Trial Plan[1] thus proposes that a liability phase be followed by a damages

11   phase, demonstrating that the off-the-clock claim is not only amenable to class treatment but

12   readily managed as such.  Further, state and federal courts have certified similar off-the-clock

13   claims.  *See, e.g.*, *Bibo v. Federal Express*, No. C 07-2505, 2009 U.S. Dist. LEXIS 37597 (N.D.

14   Cal. Apr. 21, 2009) (certifying off-the-clock class); *Morillion v. Royal Packing Co.*, 22 Cal. 4th

15   575, 584 (2000) (employees held to be under employer's control during compulsory travel time

16   because employer determined when, where and how employees were to travel).

17          The proposed On-Duty Meal Period Subclass is also ideally suited for class treatment.

18   Defendant maintained a uniform written meal break policy which did not obtain on-duty meal

19   period agreements for any employees who were required to stay on the premises during their

20   meal breaks.  However, *Brinker* has also confirmed that employees must be free to come and

21   go as they please during their meal breaks, and if not, employers must obtain written

22   agreement to an on-duty meal period.  *See Brinker*, 53 Cal. 4th at 1037, 1039.  Determining

23   class-wide liability here will entail testing whether AutoZone's meal period policy constituted

24   an improper, unwritten on-duty meal period agreement which is not supported by the nature of

25   AutoZone employees' work.  *See, e.g.*, *Delagarza v. Tesoro Ref. & Mktg. Co.*, No. C-08-5803,

26   2011 U.S. Dist. LEXIS 101127, *3-*4, *19 (N.D. Cal. Sep. 8, 2011) (certifying class of

27

28          [1] *See* Plaintiffs' Class Action Trial Plan ("Trial Plan"), filed concurrently herewith.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

employees required to stay on premises during meal periods); *York v. Starbucks Corp.*, No. CV 08-07919, 2011 U.S. Dist. LEXIS 155682, *80-82, *100 (C.D. Cal. Nov. 23, 2011) (certifying class of employees based on Starbucks' "two partner rule" which required that no employee ever be left alone in a Starbucks store, so that employees must remain in the store during their meal breaks).

Finally, because Plaintiffs' underlying claims are properly certified, so, too, are Plaintiffs' derivative claims for late pay (California Labor Code sections 201-204), inaccurate wage statements (California Labor Code section 226(a)), civil penalties pursuant to California Labor Code section 2698, *et seq.*, and unfair competition under California Business & Professions Code sections 17200, *et seq*.

In addition to common issues predominating, all other Rule 23 requirements are satisfied.  The proposed subclasses are numerous and ascertainable, and because Plaintiffs were subjected to the same uniform policies and suffered the same injuries as a result of these policies, Plaintiffs are typical of the subclasses they seek to represent.  Plaintiffs and their counsel also amply exceed the threshold for "adequacy."

In sum, class treatment is the manifestly superior way of adjudicating these claims. Because of the relatively small per-class-member damages, individual actions are not feasible. Thus class treatment is likely the ***only*** way these employees will ever find relief. Accordingly, Plaintiffs request that the Court certify the three proposed subclasses; appoint Plaintiffs as representatives for the proposed subclasses they seek to represent; and appoint Initiative Legal Group APC ("Initiative")—including Raul Perez, Rebecca Labat, and Miriam Schimmel—and Quintilone & Associates as class counsel.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

# I.   INTRODUCTION

Plaintiffs seek to represent three subclasses of non-exempt AutoZone California retail store employees: the (1) Rest Break Subclass; (2) Store Opening Off-the-Clock Subclass, and (3) On-Duty Meal Period Subclass.[2]  Each of the three proposed subclasses is amenable to common proof.

First, Defendant maintains and enforces a uniform written rest break policy that, Plaintiffs allege, violates California law.  As such, the Rest Break Subclass liability determination can be made, and is best made, in a single, class-wide adjudication.  Plaintiffs allege that Defendant's rest break policy violates California law in two ways, and both theories of rest-break liability can be determined by common proof.  First, the policy neither authorizes nor permits at least one rest break for employees working shifts of between 3.5 and 4 hours.  Second, AutoZone's rest break policy fails to authorize two rest breaks for employees working shifts of between 6 and 8 hours.  Especially because the California Supreme Court has recently confirmed that a rest break policy like Defendant's violates California law, the Rest Break subclass' allegations are best adjudicated as a class.  *See Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012).  Accordingly, Plaintiffs' Rest Break Class should be certified.

Second, Defendant's uniform policies governing employees' obligations in connection with store openings also gives rise to allegations of violations amenable to classwide adjudication.  AutoZone required that at least two employees open stores, and that ***before they clock in***, these employees perform specific tasks related to the store opening.  As such, AutoZone's uniform policy necessarily resulted in its employees accruing "hours worked" as defined under California law, but without being paid.  Accordingly, Plaintiffs' Store Opening Off-the-Clock Subclass should be certified, as well.

---

[2] Plaintiff William Doland seeks to represent all three subclasses:  the Rest Break Subclass, the Store Opening Off-the-Clock Subclass, and the On-Duty Meal Period Subclass.  Plaintiff Jimmy Ellison seeks to represent the Rest Break Subclass and the Store Opening Off-the-Clock Subclass.  Plaintiff Lynnetta Ellison only seeks to represent the On-Duty Meal Period Subclass.

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

Third, the On-Duty Meal Period Subclass should be certified.  AutoZone's uniform meal period policy did not require written on-duty meal period agreements for any employees who were required to stay on the premises during their meal breaks.  Yet, the California Supreme Court has recently confirmed that employees must be free to come and go as they please during their meal breaks, and if not, employers must obtain written agreement to an on-duty meal period.  *See Brinker*, 53 Cal. 4th at 1037, 1039.  The liability adjudication as to the On-Duty Meal Period Subclass will thus entail holding the AutoZone on-premises meal policy up to the applicable law, as confirmed by *Brinker*.  Damages, which will be a function of how many meal breaks a particular subclass member was subject to the illegal on-duty meal break policy, will be determined in a separate damages phase, as detailed in Plaintiffs' Trial Plan.

The common proof by which liability will be determined will include AutoZone policy documents, manuals, and the testimony of AutoZone designees concerning the at-issue policies.  For instance, AutoZone's written rest break policy expressly provides that only on working an eight hour shift is an employee entitled to a second rest break – despite *Brinker's* clear holding that employees are entitled to the second rest break at the sixth, not eighth, hour of a shift.  Accordingly, common questions capable of being proven by common evidence predominate Plaintiffs' subclasses.

Every other class certification element is also satisfied.  Each of the proposed subclasses is numerous and ascertainable.  Plaintiffs are typical, and are adequate class representatives of each proposed subclass they seek to represent.  Initiative is qualified to serve as class counsel.  Finally, class treatment is superior to hundreds of individual trials and is manageable, as the Trial Plan submitted in support of this class certification motion describes in detail.

Accordingly, Plaintiffs request that the Court grant this Motion; appoint Plaintiffs as the class representatives; and appoint Initiative Legal Group APC—including Raul Perez, Rebecca Labat, and Miriam Schimmel—and Quintilone & Associates as class counsel.

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

## II.     FACTS AND PROCEDURE

### A.     Defendant Employs Tens Of Thousands Of Hourly-Paid Employees

AutoZone operates hundreds of retail auto parts stores in California.  Each California retail store is staffed exclusively by non-exempt employees.  (Ex. A,[3] Sikandar Dep. Tr. at 36:9-37:12 [stating all store employees, including store manager positions, are non-exempt].)  During the proposed class periods,[4] Defendant employed thousands of non-exempt employees in California.  (*See* Declaration G. Michael Phillips, Ph.D. ["Phillips Decl."], Ex. 2 at ¶ 3 [17,258 employees' records analyzed]; *see also* Declaration of Miriam Schimmel ["Schimmel Decl."], ¶ 9.)

### B.     Plaintiffs Seek To Certify Three Proposed Subclasses

This action arises from four related cases:  (1) *Jimmy Ellison v. AutoZone, Inc.*, N.D. Cal. Case No. 3:06-cv-07522 ("*Ellison I*"); (2) *Doland v. AutoZone, Inc.*, C.D. Cal. Case No. 8:09-cv-01138; (3) *Escalante v. AutoZone, Inc.*, C.D. Cal. Case No. 2:10-cv-06625; and (4) *Lynnetta Ellison v. AutoZone, Inc.*, C.D. Cal. Case No. 2:11-cv-07686 ("*Ellison II*").  On June 15, 2010, the United States Judicial Panel on Multidistrict Litigation ("MDL Panel") consolidated *Ellison I* and *Doland*, renaming the consolidated action *In re AutoZone Wage and Hour Employment Practices Litigation*, and transferred both actions to this Court.  The MDL Panel consolidated *Escalante* and *Ellison II* with *In re AutoZone* on October 29, 2010 and October 12, 2011, respectively.[5]

Plaintiff Jimmy Ellison's operative complaint chiefly alleges rest break and off-the-clock violations, as well as derivative claims alleging the late payment of wages, wage statement violations, and unlawful business practices under California Business & Professions Code §§ 17200 *et seq.*  Jimmy Ellison also seeks to recover civil penalties pursuant to PAGA,

---

[3] Except as otherwise noted, all exhibits referenced herein are attached to the Declaration of Miriam Schimmel ("Schimmel Decl.").

[4] The relevant time period is defined differently for the proposed classes, *infra*, Section II.B of this Memorandum.

[5] Although consolidated by the MDL Panel, there is no consolidated complaint in this action.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

the California Labor Code Private Attorneys General Act of 2004.  (*See generally* Plaintiff Jimmy Ellison's Second Amended Complaint ["Ellison SAC"], No. 06-cv-07522, Docket No. 47 [N.D. Cal. Jul. 13, 2007].)

Plaintiff Doland's operative complaint alleges claims for failure to provide meal and rest periods (or compensation for meal and rest break violations); failure to pay wages upon terminated or resigned employees; knowing and intentional failure to comply with itemized employee wage statement provisions; and violations of the unfair competition law. (*See generally* Plaintiff Doland Complaint, No. 8:09-cv-01138, Docket No. 1 [C.D. Cal. Oct. 2, 2009]) ("Doland CAC").

Plaintiff Lynnetta Ellison seeks to be a class representative for the On-Duty Meal Period Subclass, and, as such, her operative complaint alleges claims for meal-break violations, as well as related and derivative claims. (*See generally* Plaintiff Lynnetta Ellison Complaint, No. 3:11-cv-05275-CRB, Docket No. 1 [N.D. Cal. Sep. 16, 2011]) ("Ellison CAC").

Plaintiffs move to certify the following proposed subclasses:

> <u>Rest Break Subclass</u>:  All non-exempt or hourly paid employees who have been employed at Defendant's retail stores in the State of California at any time on or after July 29, 2005 until the date of certification.[6]

> <u>Store Opening Off-The-Clock Subclass</u>:   All non-exempt or hourly paid employees who have been employed at Defendant's retail stores in the State of California, and, from December 7, 2002 until the date of certification, worked any opening shift, as reflected in AutoZone's SMS System Time Final Historical Report or similar records and AutoZone's Alarm Activity Reports or similar records.

> <u>On-Duty Meal Period Subclass</u>:  All non-exempt or hourly paid employees who have been employed at Defendant's retail stores in the State of California at any time on or after July 29, 2005

---

[6] Due to a settlement in a related case, *Martinez v. AutoZone*, (L.A. Super. Ct. No. BC311443), the relevant time period for Plaintiffs' rest break claims is July 29, 2005 through the date of certification.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    until the date of certification.[7]

2        Plaintiffs seek to certify their claims for failure to authorize and permit rest periods,

3    unpaid off-the-clock work done at store opening (pled by way of their claims for unpaid

4    wages, minimum wages and overtime), and failure to authorize and permit meal periods.  The

5    claims pursuant to California Labor Code sections 201-202, California Labor Code

6    section 204, California Labor Code section 226(a), California Business & Professions Code

7    section 17200, *et seq.* and PAGA[8] derive from Defendant's liability for rest period violations,

8    off-the-clock work, and on-duty meal period violations.  Accordingly, if the Court certifies

9    any of the proposed subclasses, the Court should also certify these derivative claims.  *See*

10   *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010).

11   **III.    ARGUMENT**

12       **A.    The Standard For Class Certification Is Set Forth Under Rule 23**

13       A party seeking to certify a class must demonstrate that it has met all four

14   requirements of Federal Rule of Civil Procedure 23(a), and at least one of the requirements of

15   Rule 23(b)—in this case, Rule 23(b)(3).  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d

16   1180, 1186 (9th Cir. 2001) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

17   1992)).

18       When, as here, workplace violations are at issue, "the key question for class

19   certification is whether there is a consistent employer practice that could be a basis for

20   consistent liability."  *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008).

21       The focus during certification is limited to determining whether a plaintiff's theory of

22   recovery is amenable to adjudication in a class action, not making an ultimate liability

23   determination.  *See United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010).

24

25   ──────────────
     [7] Due to the *Martinez* settlement (see n.6, *supra.*), the relevant time period for
     Plaintiffs' on-duty meal period claims is from July 29, 2005 through the date of certification.

26

27   [8] Plaintiff Jimmy Ellison also seeks to recover PAGA civil penalties through a
     representative action.  The California Supreme Court has conclusively determined that PAGA
     actions need not satisfy standard class action requirements (numerosity, ascertainability, etc.).
28   *See Arias v. Super. Ct.*, 46 Cal. 4th 969, 986 (2009).

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA
ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

Class treatment is appropriate even if each class member may at some point be required to make an individual showing as to eligibility for recovery. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975). Further, even if in practice there are deviations from the policy, commonality and predominance are generally satisfied where the plaintiff provides evidence of the existence of a company-wide policy on which the plaintiff's theory of liability is based. *See Kurihara v. Best Buy Co., Inc.*, No. C 06-01884, 2007 U.S. Dist. LEXIS 64224, *28-*30 (N.D. Cal. Aug. 30, 2007).

**B.    Each Of The Subclasses Has Predominant Common Questions Of Fact Or Law**

**1.    Common Questions of Fact or Law Predominate the Rest Break Subclass**

Throughout the relevant time period, Defendant's uniform written rest break policy, applicable to all California AutoZone store employees, provided as follows:

> An AutoZoner who works 4 hours per day is provided 1 break period of 10 consecutive minutes; an AutoZoner who works 8 hours per day is provided 2 break periods of not less than 10 consecutive minutes.

(*See* Ex. B at AMDL000794; Ex. C at AMDL 003809.) All hourly employees—irrespective their duties, positions and workloads—are required to follow Defendant's uniform rest period policy. (Sikandar Dep. Tr. at 78:6-9, Ex. A; Ex. D, AMDL008540 [AutoZone conducts audits to ensure compliance with its policies and procedures].) Additionally, Defendant's designated witness admitted that the AutoZone rest break policy ***does not authorize or permit a second rest break unless an employee works eight hours or more in a day***. (Sikandar Dep. Tr. at 7:5-23; 77:1-78:4, Ex. A.)[9]

---

[9] Moreover, Defendant had no mechanism for paying the rest period premiums mandated by California Labor Code section 226.7(b) for the rest periods that it did not authorize and permit. (*See* Ex. E, Young Dep. Tr. at 71:25-72:9.) Nor were store managers trained or instructed to report non-compliant rest breaks to AutoZone's Human Resources department, so no red flags were raised concerning payment of rest break premiums. (*See id.* at 40:24-41:7.) Defendant also admitted that it did not know if AutoZone *ever* paid a rest break premium during the relevant time period. (*See* Ex. F, Dessem 2/16/12 Dep. Tr. at 57:8-16.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

California's meal and rest break law is expressed through "Wage Orders,"[10] the pertinent one here being IWC Wage Order No. 7.  Pursuant to Wage Order No. 7,

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or ***major fraction thereof***."

8 Cal. Code of Regs. § 11070, subd. 12(A) (emphasis added).

Any time longer than two hours is considered a "major fraction," when applied to a four-hour period.  *Brinker*, 53 Cal. 4th at 1029.  Thus, as explained in *Brinker*,

> Employees are entitled to 10 minutes' rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on.

*Id*.  If the employer fails to provide an employee with rest periods in accordance with California law—e.g. failing to authorize and permit two rest breaks during an eight hour shift—the employer must pay the employee a full additional hour of compensation.  8 Cal. Code of Regs. § 11070, subd. 12(B); Cal. Lab. Code § 226.7(b).

Here, common questions predominate as to Plaintiffs' Rest Break Subclass because Defendant's rest break policy creates the following overarching issues:

- Whether Defendant's uniform written rest period policy fails to authorize and permit a ten-minute rest period when its employees work periods of between 3.5 and 4 hours;

- Whether Defendant's uniform written rest period policy fails to authorize and permit employees two rest breaks on work periods between 6 and 8 hours; and

- Whether Defendant's uniform, written rest period policy violates California law by

---

[10] California's Wage Orders are promulgated by the State's Industrial Welfare Commission (IWC), which derives its authority, by delegation, from the California Legislature.  *See Small v. Super. Ct.*, 148 Cal. App. 4th 222, 229 (2007) (*citing Cal. Hotel & Motel Ass'n v. Ind. Welfare Comm'n*, 25 Cal. 3d 200, 212 (1979)) (IWC "exercise[s] a legislative function in promulgating" Wage Orders).

I<small>NITIATIVE</small> L<small>EGAL</small> G<small>ROUP</small> APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

M<small>EMORANDUM</small> O<small>F</small> P<small>OINTS</small> A<small>ND</small> A<small>UTHORITIES</small> I<small>N</small> S<small>UPPORT</small> O<small>F</small> P<small>LAINTIFFS</small> J<small>IMMY</small> E<small>LLISON</small>, W<small>ILLIAM</small> D<small>OLAND</small> A<small>ND</small> L<small>YNNETTA</small> E<small>LLISON'S</small> M<small>OTION</small> F<small>OR</small> C<small>LASS</small> C<small>ERTIFICATION</small>

3:10-md-02159-CRB

1    failing to give full effect to Wage Order No. 7.

2        Here, Plaintiffs contend that Defendant systematically did not authorize and permit the

3    rest breaks to which Plaintiffs and the Rest Break Subclass members were entitled. As is

4    more extensively detailed in Plaintiffs' Trial Plan, the evidence presented during the liability

5    phase would include the text of Defendant's written policy, as well as Defendant's

6    corroborating party admission. (*See* Ex. B at AMDL000794; Ex. C at AMDL 003809;

7    Sikandar Dep. Tr. at 7:5-23; 77:1-78:4, Ex. A.)

8        Because Defendant's rest period policy applies to all members of the Rest Break

9    Subclass, the common questions engendered by that policy can be answered by common

10   proof. (Sikandar Dep. Tr. at 78:6-9, Ex. A; Ex. D at AMDL008540 [AutoZone conducts

11   audits to ensure compliance with its policies and procedures].)

12       The pertinent authorities confirm that common questions of fact and law will

13   predominate here. Foremost, in *Brinker*, the California Supreme Court held that the trial court

14   properly certified a rest break subclass in light of the evidence submitted regarding a common,

15   uniform non-compliant rest period policy. 53 Cal. 4th at 1033. The *Brinker* Court

16   emphasized that "[c]laims alleging that uniform policy consistently applied to a group of

17   employees is in violation of the wage and hour laws are of the sort routinely, and properly,

18   found suitable for class treatment." *Id.* (citing *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th

19   1286, 1299-1305 (2010); *Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1533-

20   38 (2008); *Bufil v. Dollar Financial Group, Inc.*, 162 Cal. App. 4th 1193, 1205-08 (2008)).[11]

21       A California district court that has already applied *Brinker* has certified a rest break

22   claim based on a defendant's rest break policy that authorized only one rest break for

23   employees who worked a shift shorter than eight hours. *See Schulz v. QualServ.*, No. 09-CV-

24   17, 2012 U.S. Dist. LEXIS 58561, *2 (S.D. Cal. Apr. 26, 2012), *pet. app. granted Cardona v.

25   Worldwide Techservices LLC*, 2012 U.S. App. LEXIS 16906 (9th Cir. July 11, 2012). In

26

27   ───────────────
     [11] Further, Plaintiffs' theory of recovery does not implicate individual issues of waiver
     because, as in *Brinker*, "[n]o issue of waiver ever arises for a rest break that was required by
     law but never authorized; if a break is not authorized, an employee has no opportunity to
28   decline to take it." *Id.*

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA
ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

doing so, the *Schulz* court followed the Supreme Court's holding, in *Brinker*, that trial court property certified a rest break subclass by challenging the employer's uniform policy. *Id.* at *23-*24. Further, the court stated in reaching that conclusion, "the Supreme Court noted that if the employer prevails on its claim that its policy satisfies the law, then the defendant benefits from the preclusive benefits of a class determination." *Id.* at *24 (citing *Brinker*, 53 Cal. 4th at 1033-34). As such, *Schulz* reinforces Brinker's holding that facially non-compliant policies are amenable to class treatment. Other courts post-*Brinker* have certified rest break claims premised on written policies that violated California law. (*See* Order on Motion for Class Certification at 9-10, 12-13, *Bickley v. Schneider National Carriers, Inc.*, No. C 08-05806 (N.D. Cal. Sep. 7, 2012), Ex. X to Schimmel Decl. (certifying rest break claims based on written policy that, on its face, violated California law).

Even before *Brinker*, California district courts typically reached the same conclusion. In *Alba v. Papa John's USA*, the plaintiff alleged that defendants designed their policies and practices to evade providing all meal and rest periods in violation of California law. 2007 U.S. Dist. LEXIS 28079, *10 (C.D. Cal. Feb. 7, 2007). In certifying the plaintiff's meal and rest break claims, the *Alba* court stated that the evidence had established that Papa John's issued a written policy that, on its face, conflicted with California law. *Id.* at *9-*10. Here, too, AutoZone's written rest break policy facially violates California law.

The *Alba* court also found that "although Defendants contend that the policy was applied differently in California, and in accordance with California wage and hour law, that contention goes to the merits of the dispute and not to the question of whether common issues predominate, which is the critical question on a motion for class certification." *Id.* at *40-*43. Thus, while AutoZone will no doubt argue that there was some slight variation in the application of its uniform rest break policy across its California stores, as in *Alba* this argument is not an impediment to class certification. *See Kurihara*, 2007 U.S. Dist. LEXIS 64224 at *28-*30.

*Brinker*, *Schulz*, *Bickley* and *Alba* are on-point with this case, as all four cases involve a uniform rest break policy that facially violates California law. As in the aforementioned

Page 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  cases, here, Plaintiffs' theory of liability revolves around Defendant's illegal written rest

2  period policy and practice, which Defendant has admitted applies and is implemented

3  uniformly as to all subclass members.  (*See* Ex. B at AMDL000794; Ex. C at AMDL 003809;

4  Sikandar Dep. Tr. at 7:5-23, 77:1-78:4, 78:6-9, Ex. A; Ex. D at AMDL008540.)

5        Accordingly, the Court should find that common issues of fact and law predominate as

6  to the Rest Break Subclass.

7              **2.      Common Questions of Fact or Law Predominate the Store Opening**

8                        **Off-the-Clock Subclass**

9        Defendant's uniform policy, manifested in actual practice, of requiring that the two

10  employees who open AutoZone stores perform specified work tasks before they clock in—

11  indeed, before they even ***can*** clock in—also gives rise to predominant common questions.

12       Throughout the class period, AutoZone required that two AutoZone employees, a

13  manager and a non-manager, arrive and remain on the premises while opening the store.

14  (Sikandar Dep. Tr. at 137:14-138:9, Ex. A; Ex. G at AMDL008182.)  Once at the store,

15  AutoZone required the Store Opening employees to perform opening tasks such as:

16  "unlock[ing] the door[;] turn[ing] the lights on[;] turn[ing] off the alarm, and bring[ing] up

17  any systems" before clocking in."  (Sikandar Dep. Tr. at 138:10-139:1, Ex. A; Ex. H at

18  AMDL003928-003930; Ex. I at AMDL008611-008613; Ex. J at AMDL008686; Ex. Q at

19  AMDL009538-009539.)  Only after those opening tasks are completed could employees then

20  clock in on the store's cash register.  (Sikandar Dep. Tr. at 136:1-136:17, Ex. A; Ex. I at

21  AMDL008611-008613; Ex. H at AMDL003928-003930.)

22       AutoZone has an electronic timekeeping system called "SMS," for which SMS time

23  records reflect employees' clock in and out times.  (Sikandar Dep. Tr. at 28:18-29:1, Ex. A.)

24  The only way for an employee to clock-in is at a register, and AutoZone does not have any

25  forms for employees to fill out if they are required to work off-the-clock.  (*See* Sikandar Dep.

26  Tr. at 28:18-29:1, 30:9-12, 31:10-20, 105:3-108:17, 109:1-18, Ex. A; Dessem 2/16/12 Dep.

27  Tr. at 94:3-25, Ex. F.)  Defendant's alarm records reflect the time that the manager in charge

28  deactivated the alarm on any given day.  (*See* Ex. K, Barker Dep. Tr. at 51:24-53:10, 68:1-

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

Page 10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

69:18; Ex. L.)  A comparison of the time that the alarm was deactivated and the first two clock-in times shows the amount of time that store opening employees were at the store, off-the-clock, before clocking in for the day.  Before May of 2011, AutoZone had no policy or procedure to capture the time spent off-the-clock between when the alarm was deactivated and employees clocked in at the beginning of the day.  (Dessem 2/16/12 Dep. Tr. at 92:1-92:7, Ex. F; Ex. H at AMDL3928-3930; Ex. M at AMDL7471-7472; Ex. I at AMDL8611-8613.)

Based upon AutoZone's SMS time records and alarm records between 2003 through August of 2009, therefore, the aggregate times spent by Store Opening employees at work after the alarm is deactivated but before being able to clock in for the day are as follows:

| YEAR | TOTAL UNCOMPENSATED TIME (IN HOURS) |
|------|------|
| 2002 | 1,752 |
| 2003 | 22,692 |
| 2004 | 26,086 |
| 2005 | 25,491 |
| 2006 | 32,331 |
| 2007 | 35,719 |
| 2008 | 36,889 |
| 2009 | 19,982 |

(*See* Phillips Decl., Ex. 2 at ¶ p. 7.)[12]

Testimony from Plaintiffs Jimmy Ellison, William Doland, and other Store Opening

---

[12] Pursuant to Magistrate Judge Corley's April 3, 2012 Order, time records in this case were limited to those already produced to Plaintiff Jimmy Ellison's counsel in *Myart v. AutoZone*, Orange County Superior Court Case No. 05CC03219.  These records cover a time period of December 7, 2002 to August 14, 2009.  (Dk. No. 77.)  Accordingly, the 2002 and 2009 figures are based on limited data since the class period begins in December 2002, and since data was only available through August 14, 2009.  However, by the terms of the April 3, 2012 Order, AutoZone cannot challenge the representativeness of this sample.  *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   Off-The-Clock Subclass members also confirms that employees were systematically not paid

2   for work done before clocking in.  (*See* Declaration of Jimmy Ellison ["Jimmy Ellison Decl."]

3   ¶¶ 4-7; Declaration of William Doland ["Doland Decl."] ¶¶ 4-7; *see generally* Compendium

4   of Class Member Declarations [class member declarations testifying to unpaid off the clock

5   work done at store opening].)

6       Plaintiffs' theory of liability is that requiring employees to perform work before they

7   are even able to clock in violates California law.  Pursuant to IWC Wage Order No. 7, "Every

8   employer shall pay to each employee, on the established payday for the period involved, not

9   less than the applicable minimum wage for all hours worked in the payroll period, whether the

10  remuneration is measured by time, piece, commission, or otherwise."  8 Cal. Code of Reg. §

11  11070, subd. 4(B).  "Hours worked" means "the time during which an employee is subject to

12  the control of an employer, and includes all the time the employee is suffered or permitted to

13  work, whether or not required to do so."  *Id.* at 2(G).  Further, "[u]nder California law it is

14  only necessary that the worker be subject to the 'control of the employer' in order to be

15  entitled to compensation.  This DLSE interpretation is consistent with our independent

16  analysis of hours worked."  *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000)

17  (internal quotations and citations omitted).

18      The Store Opening Off-The-Clock Subclass gives rise to the following predominant

19  common questions of fact or law:

20  • Whether Defendant's uniform store-opening resulted in employees turning off

21      alarms without having clocked in and, thus, without pay;

22  • Whether Defendant's uniform store-opening policy resulted in employees unlocking

23      doors, without having clocked in and, thus, without pay; and

24  • Whether Defendant's uniform store-opening policy resulted in employees activating

25      a store's technology systems, including registers, without having closed in and, thus,

26      without pay.

27      The foregoing liability questions can be answered with reference to common proof.

28  For instance, as set forth in Defendant's uniform Store Opening policies and procedures, Store

Page 12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA
ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   Opening Off-The-Clock Subclass members were not paid for the time before clocking in for

2   the day on the store's cash registers, even though they were under the control of AutoZone,

3   and performing opening tasks such as unlocking the store doors, turning on the lights,

4   disarming the alarm system, and turning on the cash registers.[13]  (*See* Sikandar Dep. Tr. at

5   136:1-136:17, 138:10-139:1, Ex. A; Ex. I at AMDL008611-008613; Ex. J at AMDL008686;

6   Ex. Q at AMDL009538-009539.)

7         Accordingly, the question of whether Defendant's uniform store-opening policy and

8   procedure resulted in uncompensated "hours worked"—starting from the time the class

9   members disengaged the store's alarm to the time the class members clocked in on the store's

10  cash registers—can be proven using evidence common to all class members.

11        Pertinent authorities support certification of Plaintiffs' off-the-clock theory of liability.

12  For example, in *Bibo v. Federal Expre*ss, the court certified a class of employees who were

13  required to perform work before and after clocking in.  2009 U.S. Dist. LEXIS 37597, *37

14  (N.D. Cal. Apr. 21, 2009).  The *Bibo* court examined Federal Express' uniform policy that

15  "[e]xcept for certain approved preliminary and postliminary activities, no employee should

16  perform work 'off the clock' for any reason."  *Id.*  The "approved" activities at issue in *Bibo*

17  required employees to wait in line for equipment and check their schedules off the clock,

18  which the court noted could result in off the clock discussions with supervisors concerning

19  scheduling issues.  *Id.*  The court held that this policy presented common questions, such as

20  whether the policy violated state law, and whether the kind of work performed was

21  compensable.  *See id.*; *see also Kurihara*, 2007 U.S. Dist. LEXIS 64224 at *30 ("The

22  overarching question of whether this policy results in unlawful undercompensation, however,

23  is common and predominant"); *see also Otsuka v. Polo Ralph Lauren Co.*, 251 F.R.D. 439,

24  447-48 (N.D. Cal. 2008) (holding that whether defendant's loss-prevention inspection policy

---

25        [13]  In May 2011, AutoZone changed its Store Opening policy so that employees

26  working the opening shift had one minute of additional time added to their records if they
    indicate they are working an opening shift when clocking in.  (*See* Ex. I at AMDL008611-

27  8613; Dessem 2/16/12 Dep. Tr. at 90:14-91:11, 91:25-94:2, Ex. F.)  Other than this minute of
    additional time, AutoZone's Store Opening policies and procedures remain unchanged.

28  (Sikandar Dep. Tr. at 139:25-141:21, Ex. A.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  resulted in compensable off-the-clock work raised common predominant questions of law and

2  fact).  The relevant authorities thus imply that the dispositive, common issue in this case is

3  whether the time spent by Store Opening Off-The-Clock Subclass members under Defendant's

4  control before clocking in constitutes "hours worked" under California law.

5      Accordingly, the Court should find that common issues of law and fact predominate

6  over individualized issues with respect to the proposed Store Opening Off-The-Clock

7  Subclass.

8          **3.     Common Questions of Fact or Law Predominate the On-Duty Meal**

9                  **Period Subclass**

10     Throughout the relevant time period, Defendant's uniform written meal break policy,

11 applicable to all California AutoZone store employees, provided as follows:

> If management requires the AutoZoner to remain at the store or
> facility during the meal period, the meal period **must be paid.**

14 (*See* Ex. B at AMDL000794; Ex. C at AMDL 003809 [emphasis in original].)  All non-

15 exempt and hourly paid employees, regardless of their duties, positions and workloads, are

16 required to follow Defendant's uniform meal period policy.  (Sikandar Dep. Tr. at 57:9-25,

17 102:25-104:14, Ex. A [AutoZone conducts audits to ensure compliance with its policies and

18 procedures]; Ex. D, AMDL008540 [same].)[14]

19     Plaintiffs confirm that, as a practical matter, they were required to stay on-premises

20 during meal breaks.  (*See* Declaration of William Doland, ¶ 11 ["[W]hen working shifts of

21 over 6 hours, my supervisor would sometimes require me to remain in the store during my

22 meal period. . . .   However, I do not recall receiving an additional hour of pay when

23 AutoZone required me to remain in the store during my meal period."]; Declaration of Lynetta

24

25     [14] Moreover, before 2011, Defendant had no mechanism for paying the meal period
premiums mandated by California Labor Code section 226.7(b) for the meal periods that it did
26 not authorize and permit.  (*See* Ex. F, Dessem 2/16/12 Dep. Tr. at 51:6-53:13, 146:1-148:20.)
Nor were store managers trained or instructed to report non-compliant meal periods to
27 AutoZone's Human Resources department, so there were no internal procedures for
communicating the obligation to pay meal period premiums.  (*See* Ex. E, Young Dep. Tr. at
28 30:16-25.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA
ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

Ellison, ¶ 7 [same].) However, neither signed a written on-duty meal period agreement during their employment. (*See id.*)

Pursuant to Labor Code section 512 and IWC Wage Order No. 7, "an employer must provide the employee with a meal period of not less than 30 minutes for workdays lasting more than five hours, and provide two meal periods for workdays in excess of 10 hours, subject to waiver in certain circumstances." *Brinker*, 53 Cal. 4th at 1036-37; Labor Code § 512; 8 Cal. Code of Regs. § 11070, subd. 11(A)-(B). Further,

> Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.

8 Cal. Code of Regs. § 11070, subd. 11(C); *Brinker*, 53 Cal. 4th at 1039; *see also* DLSE Enforcement Manual at § 45.2.3(2)(a), Ex. A to Request for Judicial Notice ("RJN"); DLSE Opinion Letter 2002.09.04, Ex. B to RJN (on-duty meal period exception narrowly construed and burden rests on the employer to establish criteria justifying on-duty meal periods). If the employer fails to authorize and permit meal periods in accordance with California law, the employer must pay the employee a full additional hour of compensation. 8 Cal. Code of Regs. § 11070, subd. 11(D); Cal. Lab. Code § 226.7(b).

Common questions predominate Plaintiffs' On-Duty Meal Period Subclass, as Defendant's meal break policy creates the following overarching issues:

- Whether Defendant's meal period policy, in practice, constitutes an unwritten and improper on-duty meal period agreement; and

- Whether Defendant's uniform written meal period policy violates California law.

Plaintiffs' theory of liability here is susceptible to efficient class-wide determination. As set forth above, the overarching questions of law and fact are whether Defendant's uniform meal period policy failed to obtain written mutual consent to an on-duty meal period in accordance with California law when AutoZone required employees to stay on premises during their meal periods, and whether this constitutes an improper, unwritten on-duty meal

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   period agreement.  This theory of liability can be proven by common evidence, specifically,

2   the text of Defendant's uniform written policy which applies class-wide.  (*See* Ex. B at

3   AMDL000794; Ex. C at AMDL 003809; Sikandar Dep. Tr. at 57:9-25, 102:25-104:14, Ex. A

4   [AutoZone conducts audits to ensure compliance with its policies and procedures]; Ex. D,

5   AMDL008540 [same].)

6         This common core of salient facts would be applicable to **every** class member's claim.

7   *See Clayton v. Knight Transportation*, No. 11cv0735, 2012 U.S. Dist. LEXIS 98459, *17-*18

8   (E.D. Cal. Jul. 16, 2012) ("In other words, for attendees attending classroom orientation,

9   employment status can be determined on a group-wide basis because the relevant facts are the

10  same for the group").  If thousands of individual lawsuits were brought by individual

11  employees based on the theory asserted by Plaintiffs, a fact finder would consider the same

12  evidence.  Likewise, the thousands of lawsuits would all ultimately determine whether

13  AutoZone's policy failed to provide meal breaks in accordance with California law.

14        Plaintiffs' theory of liability also comports with the California Supreme Court's

15  holding in *Brinker*, which explained that employers must afford employees uninterrupted half-

16  hour periods in which they are relieved of any duty or employer control and are free to come

17  and go as they please, and that if an employer does not afford an off-duty meal period, it must

18  obtain written consent to an on-duty meal period.  53 Cal. 4th at 1037, 1039.  Further,

19  Plaintiffs' theory of recovery does not implicate individual issues of what employees were

20  doing during the meal periods they were required to remain on premises, because "[t]he

21  employer that refuses to relinquish control over employees during an owed meal period

22  violates the duty to provide the meal period and owes compensation (and premium pay) for

23  hours worked."  *Id.* at 1040.  Answering the common questions posed by Plaintiffs, above, in

24  the affirmative would provide a common answer to why AutoZone did not provide meal

25  breaks in accordance with California law—because it had a policy that did not obtain written

26  consent for employees to take on-duty meal periods.

27        Courts have certified similar theories of liability.  For example, in *Delagarza v. Tesoro*

28  *Ref. & Mktg. Co.*, the court granted certification on the basis of plaintiff's allegation that the

Page 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA
ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

defendant required that workers remain on the premises and near their work areas at all times, thereby failing to relieve employees of all duties. 2011 U.S. Dist. LEXIS 101127, *3-*4, *19 (N.D. Cal. Sept. 8, 2011).  In certifying Delagarza's meal period claims, the Court explained that "the employer's requirement that workers be available for potential interruptions, rather than the frequency of the interruptions themselves, that establishes the violation." *Id.* at *39-*43 (citing *Gardner v. Shell Oil Co.*, 2011 U.S. Dist. LEXIS 44851 (N.D. Cal. April 21, 2011)).  Rather, in *Delagarza*—as in the instant action—the plaintiffs' duties were not restricted to actually responding to calls and interruptions, but instead "the mere ongoing requirement to remain on premises [and] ready to respond to calls constitutes a duty in and of itself." *Id.* at *40-*41.  As such, "there is still a classwide dispute over whether Plaintiffs' meal periods were 'off-duty' given the restrictions on their activities during shifts. . . [which] can be resolved for all members of the class in a single adjudication." *Id.* at *43 (citation omitted).

Similarly, in *York v. Starbucks Corp.*, the court certified a class of employees based on Starbucks' "two partner rule" which required that no employee ever be left alone in a Starbucks store, so that employees were forced to take their meal break in the store and prevented from leaving during their break.  2011 U.S. Dist. LEXIS 155682, *80-82, *100 (C.D. Cal. Nov. 23, 2011).  The *York* court found that—irrespective of any merits inquiries as to whether the "two partner rule" constitutes an improper on duty meal period—the company-wide policy created a common question capable of being answered by common proof.  *See id.* at 82.

*Brinker*, *Delagarza*, and *York* are all on point with this case, as Plaintiffs' theory of liability is premised on the legality of Defendant's uniform written meal period policy, which did not obtain on-duty meal period agreements for any employees who were required to stay on the premises during their meal breaks, and which Defendant has admitted applies and is implemented uniformly on all putative class members.  (*See* Ex. B at AMDL000794; Ex. C at AMDL 003809; Sikandar Dep. Tr. at 57:9-25, 102:25-104:14, Ex. A; Ex. D, AMDL008540.) Thus, the Court should find that common issues of fact and law predominate as to the On-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    Duty Meal Period Subclass.

2        **C.**    **Plaintiffs Are Typical Of The Proposed Subclasses They Seek To**

3            **Represent**

4          Plaintiff Jimmy Ellison is typical of the Rest Break Subclass and Store Opening Off-

5    the-Clock Subclass.  Like members of the Rest Break Subclass, Jimmy Ellison was a non-

6    exempt AutoZone employee during the relevant time period.  (*See* Jimmy Ellison Decl. at ¶ 2;

7    Ex. S [Jimmy Ellison time records].)  Further, like members of the Rest Break Subclass,

8    Plaintiff Jimmy Ellison was subject to AutoZone's uniform rest break policies.  (*See* Sikandar

9    Dep. Tr. at 7:5-23; 77:1-78:4, Ex. A; Ex. B at AMDL000794; Ex. C at AMDL 003809; Jimmy

10   Ellison Decl. at ¶ 9.)  Due to this policy, AutoZone did not authorize and permit Plaintiff

11   Jimmy Ellison to take rest breaks in accordance with Wage Order No. 7 in instances where he

12   worked periods of more than 6 hours and less than 7 hours in length, and periods of 7 hours or

13   more and less than 8 hours in length.  (*See* Jimmy Ellison Decl. ¶ 9; Ex. S at AMDL005936

14   [shift of 7 hours 4 minutes on 5/9/06; shift of 6 hours 59 minutes on 5/11/06], AMDL005952

15   [shift of 6 hours 40 minutes on 1/31/06]; AMDL005964 [shift of 7 hours 58 minutes on

16   12/8/05; shift of 7 hours 56 minutes on 12/9/05].)  Additionally, Plaintiff Ellison was not paid

17   the premiums required by California Labor Code section 226.7(b) as compensation for rest

18   break violations.  (*See* Jimmy Ellison Decl. ¶ 9; Ex. P at ELLISON0006, ELLISON00013,

19   ELLISON00073.)

20         Plaintiff Jimmy Ellison is also typical of the Store Opening Off-The-Clock Subclass

21   because he worked opening shifts during the relevant time period.  (*See* Jimmy Ellison Decl.

22   ¶¶ 4-7; *compare* Ex. R at p. 203 [showing alarm disengage time on 1/12/06] *with* Ex. S at

23   AMDL005955 [showing Ellison clock in on 1/12/06; 13 minutes off-the-clock], Ex. R at p.

24   209 [showing alarm disengage time on 3/5/06] *with* Ex. S at AMDL005945 [Jimmy Ellison

25   clock in on 3/5/06; 2 minutes off-the-clock].)  Plaintiff Jimmy Ellison was subject to

26   AutoZone's uniform Store Opening policy, which required him and at least one other

27   employee to open the store and complete opening shifts tasks such as "unlock[ing] the door[;]

28   turn[ing] the lights on[;] turn[ing] off the alarm, and bring[ing] up any systems" before

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA
ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   clocking in.  (Sikandar Dep. Tr. at 136:1-17; 138:10-139:1, Ex. A; Ex. H at AMDL003928-

2   003930; Ex. I at AMDL008611-008613; Ex. J at AMDL008686; Ex. Q at AMDL009538-

3   009539.)  AutoZone's alarm records and time records show instances where Plaintiff Jimmy

4   Ellison worked off the clock during store opening.  (*Compare* Ex. R at p. 203 [showing alarm

5   disengage time on 1/12/06] *with* Ex. S at AMDL005955 [showing Ellison clock in on 1/12/06;

6   13 minutes off-the-clock], Ex. R at p. 209 [showing alarm disengage time on 3/5/06] *with* Ex.

7   S at AMDL005945 [showing Ellison clock in on 3/5/06; 2 minutes off-the-clock].)  Plaintiff

8   Jimmy Ellison was not compensated for this time.  (*See* Jimmy Ellison Decl. ¶ 7; Ex. P at

9   ELLISON0004, ELLISON0008.)

10          Plaintiffs William Doland and Lynnetta Ellison are both typical of the Rest Break

11  Subclass.  Both were hourly AutoZone employees during the class period and as such, both

12  were subject to AutoZone's uniform rest break policies. (*See* Doland Decl. at ¶¶ 2, 9; Lynnetta

13  Ellison Decl. at ¶¶ 2, 5; *see supra*, at section B1 [all hourly AutoZone employees subject to

14  rest break policy].) AutoZone authorized neither Doland nor Lynnetta Ellison to take a second

15  rest break in instances where they worked periods of more than 6 hours and less than 7 hours,

16  and periods of 7 hours or more and less than 8 hours.  (*See* Doland Decl. ¶ 9; Ex. U at

17  AMDL006253 [shift of 7 hours 20 minutes on 4/1/08]; AMDL006252 [shift of 6 hours 54

18  minutes on 4/8/08; shift of 6 hours 31 minutes on 4/9/08]; Lynnetta Ellison Decl. ¶¶ 4-5;

19  Ex. T at AMDL006141 [shift of 6 hours 8 minutes on 5/12/06]; AMDL006161 [shift of 7

20  hours 53 minutes on 12/23/05].)  Further, neither were compensated premiums for the rest

21  breaks that AutoZone did not authorize and permit.  (*See* Doland Decl. ¶ 9; Ex. W at

22  DOLAND000019, DOLAND000023, DOLAND000024; Lynnetta Ellison Decl. ¶ 5.)

23          Plaintiffs William Doland and Lynnetta Ellison are also both typical of the On-Duty

24  Meal Period Subclass.  As hourly AutoZone employees, both were subject to AutoZone's

25  uniform meal period policy.  (*See* Doland Decl. at ¶¶ 2, 11; Lynnetta Ellison Decl. at ¶¶ 2, 7;

26  *see supra*, at section B3 [all hourly AutoZone employees subject to meal period policy].)  Due

27  to this policy, AutoZone did not authorize and permit William Doland and Lynnetta Ellison to

28  take a duty-free meal period in instances where they worked shifts of more than 6 hours.  (*See*

Page 19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA
ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    Doland Decl. ¶¶ 10-11; Ex. U at AMDL006256 [shift of 7 hours 5 minutes on 3/11/08; shift of

2    6 hours 9 minutes on 3/13/08]; Lynnetta Ellison Decl. ¶¶ 6-7; Ex. T at AMDL006141 [shift of

3    6 hours 8 minutes on 5/12/06.)  Further, William Doland and Lynnetta Ellison did not sign an

4    on-duty meal period agreement, and were not compensated premiums for the meal periods that

5    AutoZone did not authorize and permit.  (*See* Doland Decl. ¶ 11; Ex. W at DOLAND000025;

6    Lynnetta Ellison Decl. ¶ 7.)

7        Plaintiff Doland is also typical of the Store Opening Off-The-Clock Subclass because

8    he worked opening shifts during the relevant time period.  Plaintiff Doland was subject to

9    AutoZone's uniform Store Opening policy, which required him to open the store and complete

10   opening shifts tasks such as "unlock[ing] the door[;] turn[ing] the lights on[;] turn[ing] off the

11   alarm, and bring[ing] up any systems" before clocking in.  (Sikandar Dep. Tr. at 136:1-17;

12   138:10-139:1, Ex. A; Ex. H at AMDL003928-003930; Ex. I at AMDL008611-008613; Ex. J

13   at AMDL008686; Ex. Q at AMDL009538-009539.)  AutoZone's alarm records and time

14   records show instances where Plaintiff Doland worked off the clock during store opening.

15   (*Compare* Ex. V at p. 48 [showing alarm disengage time on 11/24/06] *with* Ex. U at

16   AMDL006317 [showing Doland clock in on 11/24/06; 8 minutes off-the-clock], Ex. V at p. 56

17   [showing alarm disengage time on 8/11/06] *with* Ex. U at AMDL006332 [Doland clock in on

18   8/11/06; 6 minutes off-the-clock].)  Plaintiff Doland was not compensated for this time.  (*See*

19   Doland Decl. ¶ 7.)

20        **D.    Adequacy Is Satisfied As To All Subclasses**

21        Plaintiffs must also show that they and their counsel can adequately represent the

22   classes sought to be certified.  *See* Fed. R. Civ. P. 23(a)(4).  The Rule 23(a) adequacy

23   requirement is met here as Plaintiffs and proposed class members will have the same interests

24   in seeking the same remedies for redress for the same California Labor Code violations by

25   their common employer, AutoZone.  Likewise, Plaintiffs' counsel also satisfies the Rule 23(a)

26   adequacy-of-counsel requirement.  Indeed, the Court has already appointed Initiative Legal

27   Group's attorneys to serve as Lead Counsel for the purposes of discovery, and Initiative Legal

28   Group's attorneys—including Raul Perez, Rebecca Labat, and Miriam Schimmel—have

Page 20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA
ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

1  demonstrated that they are qualified, as has Quintilone & Associates. (*See* Schimmel Decl.

2  ¶¶ 3-5; Perez Decl. ¶¶ 2-3; Labat Decl. ¶¶ 2-4; Quintilone Decl. ¶¶ 5-11.)

3       **E.    Plaintiffs' Subclasses Are Ascertainable and Are Sufficiently Numerous**

4       The class must be adequately defined and ascertainable before a class action may

5  proceed. *See* Fed. R. Civ. P. 23(a)(1). Here, class members are easily identifiable as the

6  definitions for each proposed class and subclass are objectively defined and may be

7  ascertained through Defendant's corporate records.

8       The numerosity requirement is satisfied as to each subclass. With respect to the Rest

9  Break Subclass, Defendant employed at least 17,278 employees during the relevant time

10  period. Further, an analysis of SMS Time Records reveal that at least 68.5% of employees

11  worked shifts of 3.5 and less than 4 hours, 92.5% of employees worked shifts of more than 6

12  hours and less than 7 hours, and 94.7% of employees worked a shift of at least 7 but less than

13  8 hours. (*See* Phillips Decl.. Ex. 2 at ¶ pp. 3-4; Ex. N [time records for California store hourly

14  employees].) With respect to the Store Opening Off-The-Clock Subclass, an analysis of SMS

15  Time Records and alarm records reveal that at least 16,173 employees are members of the

16  proposed class. (*See* Phillips Decl., Ex. 2 at ¶ p. 7; Exs. N-O [alarm records for California

17  stores and time records for store hourly employees].) With respect to the On-Duty Meal

18  Period Subclass, an analysis of SMS Time Records reveal that at least 15,717 employees

19  worked shifts longer than 6 hours without recording a meal period. (*See* Phillips Decl., Ex. 2

20  at ¶ p. 8; Ex. N [time records for California store hourly employees].)

21       **F.    Class Treatment Is Superior To A Multitude Of Individual Lawsuits Since**

22            **Plaintiffs' Claims Are Capable of Being Adjudicated Via Common Proof**

23       A class action must be superior to other available methods. *See* Fed. R. Civ. P.

24  23(b)(3). "The superiority inquiry requires determination of 'whether objectives of the

25  particular class action procedure will be achieved in the particular case.'" *Hanlon v. Chrysler*

26  *Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998).

27       Here, superiority is easily established. There is no evidence that class members would

28  have an interest in individual control of their cases. Because the class members' individual

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   claims are relatively small, and the filing fee and costs would typically exceed any potential

2   recovery, there is little incentive for them to be brought as individual cases.  Further, class

3   members' claims would rely on largely the same evidence of Defendant's policies and

4   practices.  Liability will be proven using common class-wide methods of proof, including

5   Defendant's uniform, company-wide policies and procedures.  Specifically, liability as to

6   Plaintiffs' rest break and meal period claims can be proven through common evidence,

7   including AutoZone's uniform rest break and meal period policies, and corroborating

8   corporate witness deposition testimony.  Likewise, liability as to Plaintiffs' Store Opening

9   Off-The-Clock Subclass can be proven through Defendant's Store Opening policy and

10  procedure, and corporate witness deposition testimony.

11          After liability has been established, demonstrating that Defendant failed to authorize

12  and permit meal and rest periods, and required employees to work off-the-clock in violation of

13  California law, Dr. Phillips testifies that he can reasonably and reliably estimate and calculate

14  class members' damages through a rigorous examination of putative class members' time and

15  payroll records.  (*See* Phillips Decl., Ex. 2 at pp. 2-8.)  Class members' off-the-clock work can

16  also be reasonably estimated and calculated through comparison of Store Opening Off-The-

17  Clock Subclass members' time records and AutoZone's alarm records. (*See id.* at pp. 4-7.)[15]

18          Plaintiffs' Trial Plan further evidences classwide manageability.  (*See generally*

19  Plaintiffs' Class Action Trial Plan.)  Plaintiffs anticipate a bifurcated trial with a liability

20  phase and damages phase.  (*Id.*)  During the liability phase, Plaintiffs intend to present

21  common evidence regarding Defendant's corporate policies and procedures.  (*Id.*)  If the fact-

22

23          [15] "Where the employer has failed to keep records required by statute, the
    consequences for such failure should fall on the employer, not the employee.  In such a
24  situation, *imprecise evidence by the employee can provide a sufficient basis for damages.*"
    *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 961 (2005) (emphasis added)
25  (citing *Hernandez v. Mendoza* 199 Cal. App. 3d 721, 727 (1988)).  "Once an employee shows
    that he has performed work for which he is not paid, the fact of damage is certain; the only
26  uncertainty is the amount of damage.  In such a case, it will be a perversion of justice to deny
    all relief to an injured person, thereby relieving a wrongdoer from making any restitution for
27  his wrongful act."  *Hernandez*, 199 Cal. App. 3d at 726, 727; *see also Anderson v. Mt.
    Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)); *Gilmer v. Alameda-Contra Costa Transit
28  Dist.*, 2011 U.S. Dist. LEXIS 126845, *17 (N.D. Cal. Nov. 2, 2011).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA
ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB

finder determines that liability exists, the Court can hold a damages phase regarding the number of violations, non-exempt employees' hourly wages, and penalty calculations.  (*Id.*) These calculations can be done in a precise manner for each class member based on time recording and corresponding payroll data of putative class members.  (*Id.*)  Plaintiffs may also retain experts in accounting processes and survey techniques to determine the amount of damages incurred by the class.  (*Id.*)

For these reasons, a class action is the superior method of adjudication.

**IV.    CONCLUSION**

Plaintiffs respectfully request that the Court grant the Motion for Class Certification, or grant any other relief deemed just and proper.

Dated:  September 27, 2012                     Respectfully submitted,

Initiative Legal Group APC

By: _____
Raul Perez
Rebecca Labat
Miriam L. Schimmel
David Cheng
Katherine Den Bleyker

Attorneys for Plaintiff Jimmy Ellison and
Lead Counsel for the Purposes of Discovery

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS JIMMY ELLISON, WILLIAM DOLAND AND LYNNETTA ELLISON'S MOTION FOR CLASS CERTIFICATION

3:10-md-02159-CRB