MICHAEL E. BREWER, Bar No. 177912
mbrewer@littler.com
ANNE-MARIE WAGGONER, Bar No. 173407
awaggoner@littler.com
GREGORY G. ISKANDER, Bar No. 200215
giskander@littler.com
JOHANNA R. CARNEY, Bar No. 277946
jcarney@littler.com
LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard, Suite 600
Walnut Creek, California  94597
Telephone:    925.932.2468

JEREMY A. ROTH, Bar No. 129007
jroth@littler.com
DAVID J. DOW, Bar No. 179407
ddow@littler.com
JERRILYN T. MALANA, Bar No. 195260
jmalana@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, California  92101.3577
Telephone:    619.232.0441

Attorneys for Defendant
*AUTOZONE, INC. (Jimmy Ellison,
Doland, and Escalante Matters, Only)*

MICHAEL A. HOFFMAN, Bar No. 162496
ARENA HOFFMAN, LLP
44 Montgomery Street, Suite 1200
San Francisco, CA  94104
Telephone:    415.433-1414
mhoffman@arenahoffman.com

*Attorney for Defendant
AUTOZONE, INC. (Ellison actions only)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: AUTOZONE, INC., WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION. | Case No.  3:10-md-02159-CRB<br><br>**CLASS ACTION**<br><br>**DEFENDANT AUTOZONE, INC.'S NOTICE OF MOTION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF ORDER GRANTING CERTIFICATION OF REST BREAK SUBCLASS**<br><br>Date:  June 28, 2013<br>Time: 10:00 am.<br>Courtroom: 16, 17th Floor<br>The Honorable Charles R. Breyer<br><br>Trial Date:  None Set |

(CASE NO. 3:10-MD-02159-CRB)                                    MOTION FOR RECONSIDERATION

# TABLE OF CONTENTS

PAGE

I.   NOTICE OF MOTION AND MOTION .................................................................................. 1

II.  STATEMENT OF RELIEF SOUGHT .................................................................................... 1

III. MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

    A.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

    B.   ARGUMENT ................................................................................................................ 3

        1.   Comcast Requires the Proponent of Class Certification to Submit A Damages Model That Measures Damages On a Class-Wide Basis And Is Reliably Related To Defendant's Liability; Plaintiffs' Trial Plan Does Not And Cannot Do This .......................................................................... 3

        2.   Under Wang, AutoZone's Allegedly Uniform Rest Break Policy Is Insufficient To Satisfy The Predominance Requirement of Rule 23(b)(3) ..................................................................................................... 8

        3.   Wang and Comcast establish that a methodology that relies on the existence of a uniform rest break policy does not meet the predominance requirements of Rule 23(b)(3) ................................................ 10

IV.  CONCLUSION ..................................................................................................................... 11

TLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

(CASE NO. 3:10-MD-02159-CRB)            i.            MOTION FOR RECONSIDERATION

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Brinker Rest. Corp. v. Superior Court,
   53 Cal. 4th 1004 (2012) ................................................................................................... passim

Comcast Corp. v. Behrend,
   133 S. Ct. 1426 (2013) ..................................................................................................... passim

Forrand v. Fed. Express Corp.,
   2013 U.S. Dist. LEXIS 62252 (C.D. Cal. Apr. 25, 2013) ................................................ passim

Ginsburg v. Comcast Cable Communications,
   2013 U.S. Dist. LEXIS 55149 (W.D. Wash. Apr. 17, 2013) .............................................. 7, 8, 9

In re: Wells Fargo Home Mortg.,
   571 F.3d 953 (9th Cir. 2009) ................................................................................................ 9, 10

MGM Grand Hotel, Inc. v. Imperial Glass Co.,
   533 F.2d 486 (9th Cir. 1979) ....................................................................................................11

Portillo v. Kellermeyer Building Svcs.,
   Alameda Superior Court Case No. RG11 558695 ............................................................. 10, 11

Smith v. Family Video Movie Club, Inc.,
   2013 U.S. Dist. LEXIS 54512 (N.D. Ill. April 15, 2013) .......................................................... 9

Wang v. Chinese Daily News,
   No. 08-55483, No. 08-56740, 2013 U.S. App. LEXIS 4423 (9th Cir. 2013) .................. passim

Zinser v. Accufix Research Inst., Inc.,
   253 F.3d 1180 (9th Cir.), amended 273 F.3d 1266 (9th Cir. 2001) ........................................... 4

OTHER AUTHORITIES

Federal Rule of Civil Procedure 23 ........................................................................................ passim

N.D. Cal. Civil Local Rule 7-9 ...................................................................................................... 2

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

(CASE NO. 3:10-MD-02159-CRB)    ii.    MOTION FOR RECONSIDERATION

## I.  NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 28, 2013, at 10:00 a.m., in the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, 94102, in Courtroom 6, 17th Floor, the Honorable Charles R. Breyer, presiding, pursuant to Civil Local Rule 7-9(b)(2) and the Court's Order Granting Defendant Leave to File a Motion for Reconsideration (Dkt.#180), Defendant AutoZone, Inc. ("Defendant") will and hereby does move that this Court reconsider the its December 21, 2012, Order Granting In Part And Denying In Part Ellison's Motion for Class Certification ("Order"), as to Plaintiffs' certified rest break claim, only, in light of new case law decided since the Order was issued. This motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, the files and records in this action, and on such other and further argument as the Court may permit at the hearing on this motion.

## II.  STATEMENT OF RELIEF SOUGHT

Defendant respectfully requests that this Court vacate its December 21, 2012, Order Granting In Part And Denying In Part Ellison's Motion for Class Certification, and enter an Order Denying Ellison's Motion for Class Certification in its Entirety.

## III.  MEMORANDUM OF POINTS AND AUTHORITIES

### A.  INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant files this motion for reconsideration only as to the portion of the Order certifying Plaintiffs' rest break claim. (Dkt. 180.) Two new lines of case law – one originating from a United States Supreme Court decision, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) and the other from a Ninth Circuit Court of Appeals decision, *Wang v. Chinese Daily News*, No. 08-55483, No. 08-56740, 2013 U.S. App. LEXIS 4423 (9th Cir. 2013) – offer new insight into the proper analysis of the predominance requirements of Federal Rule of Civil Procedure 23(b)(3). Applying this new case law to Plaintiffs' papers in support of their motion for certification of a rest break subclass, Defendant's opposition, and the Court's Order certifying a rest break subclass, it is clear that Plaintiffs did not meet their burden, and the rest break subclass should not have been certified.

(CASE NO. 3:10-MD-02159-CRB)    1.    MOTION FOR RECONSIDERATION

In the Order, the Court reasoned that "claims based on a uniform policy are entitled to class certification" and "there was no dispute" that Defendant had a uniform rest break policy. (*See id.* at 12:13-14, 13:19-20; s*ee also id.* at 14:7-9 ("[b]ecause this subclass's claims are based entirely on the legality of Defendant's uniform written rest break policy, the Court concludes that common questions predominate").) Moreover, despite Defendant's argument that a rest break subclass is unmanageable, the Court explained, "AutoZone's liability will be based on whether its rest break policy violates the law or does not – the policy is a fact common to all class members. That class members will need to individually prove their damages might be daunting, but it is not a bar to certification." (*Id.* at 16:13-17.) Both *Comcast* and *Wang* not only address these manageability concerns but under their holdings and rationales, certification of a rest break subclass should have been denied.

Under *Comcast*, trial courts must "take a 'close look' at whether common questions predominate over individual ones" in evaluating whether a claim is amenable to adjudication by common proof. *Comcast*, 133 S. Ct. at 1432 (citing *Dukes v. Wal-Mart*, 131 S. Ct. 2541 (2011) and *Amchem Products, Inc. v. Windsor*, 51 U.S. 591, 615 (1997)). This decision alters analysis of the propriety of certification of a rest break subclass. As pointed out in AutoZone's objections to Plaintiffs' trial plan (dkt. 154), Plaintiffs have not proposed a damages theory that applies to the class as a whole, as their trial plan does not adequately tie the allegations to "a proper and reliable measure of damages for work done during [rest] breaks." *Forrand v. Fed. Express Corp.*, 2013 U.S. Dist. LEXIS 62252 at *15 (C.D. Cal. Apr. 25, 2013) [applying *Comcast*].

In addition, the Ninth Circuit's decision in *Wang v. Chinese Daily News*, undercuts any presumption that "claims based on a uniform policy are entitled to class certification." (Order at 13:19-20.) Indeed, the *Wang* decision holds that "a district court abuses its discretion in relying on an internal uniform exemption policy to the near exclusion of other factors relevant to the predominance inquiry." *Wang*, 2013 U.S. App. LEXIS 4423 at *13. This is true in the rest break context as well, in light of the *Brinker* standard that employers need not actually ensure employees take meal and rest breaks and that an employer is only liable when it "knew or reasonably should

have known that the worker was working through the authorized meal period." *Wang* at *14, citing *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012).

These recent cases establish that Plaintiffs' rest break subclass should not have been certified because: (1) Plaintiffs have not and cannot articulate a manner in which damages may be both measured on a class-wide basis and also reliably relate to Defendant's alleged wrong-doing, pursuant to *Comcast*; (2) Defendant's allegedly uniform rest break policy cannot in itself establish predominance, according to *Wang*; and (3) separately, and especially together, *Wang* and *Comcast* are fatal to Plaintiffs' method of common proof.

## B.  ARGUMENT

### 1. *Comcast* Requires the Proponent of Class Certification to Submit A Damages Model That Measures Damages On a Class-Wide Basis And Is Reliably Related To Defendant's Liability; Plaintiffs' Trial Plan Does Not And Cannot Do This.

It is well settled that "[c]lass certification is proper only if the trial court has concluded, after a 'rigorous analysis,'" that Rule 23(a) and at least one prong of Rule 23(b) have been satisfied. *Chinese Daily News*, 709 F.3d at 833 (quoting *Wal-Mart*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (citation omitted)); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), amended 273 F.3d 1266 (9th Cir. 2001). The proponent of the class bears the burden of demonstrating that class certification is appropriate. *Comcast*, 133 S. Ct. at 1432 ("[A] party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23") (citation and quotation marks omitted). Failure to meet any provision of Rule 23(b) bars certification. *Id.* (the proponent must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)"). To satisfy the third prong of Rule 23(b), trial courts are instructed to take a close look at whether "questions of law or fact common to class members predominate over any questions affecting only individual members." *Id.*

When taking a "close look," a trial court must "entertain arguments against [the plaintiff's] damages model that [address] the propriety of class certification," and thus find that any methodology to measure and quantify damages on a classwide basis is neither "arbitrary" nor "require[s] labyrinthine individual calculations." *Comcast*,133 S.Ct. at 1431-33. Lower courts must

make an affirmative finding that the plaintiff has proposed a damages model "that can be applied classwide *and* that ties the plaintiff's legal theory to the impact of the defendant's allegedly illegal conduct." *Forrand,* 2013 U.S. Dist. LEXIS 62252, *7 (citing *Comcast,* 133 S.Ct. at 1433) (emphasis in original). In other words, a methodology that passes muster under the post-*Comcast* certification standard must bridge the gap between the legal theory and the injury allegedly caused by Defendant. *See Comcast,* 133 S. Ct. at 1435.

Plaintiffs' proposed system of determining damages does not do this. In the "Class Action Trial Plan" that Plaintiffs submitted in support of their Motion for Class Certification, Plaintiffs propose a bifurcated trial whereby Defendant's liability would turn entirely on the legality of Defendant's written rest period policy, and damages would be calculated merely by an examination of time and payroll records. (*See* Pl's Class Action Trial Plan, dkt. 95-2, pp. 4:23-5:14, 6:9-11, 6:15-20.) As discussed further below, *Wang* subverts Plaintiffs' reliance on Defendant's allegedly uniform policy to obtain certification. Even setting this issue aside, Plaintiffs' approach is still fatally flawed under *Comcast* because it is arbitrary and fails to bridge the gap between the legal theory and Defendant's alleged wrong-doing.

Time and payroll records do not reflect rest breaks taken (or not taken, for that matter) because "[r]est breaks are not recorded at AutoZone, and employees do not clock out for rest breaks." (Declaration of Carlos Jon, filed Nov. 2, 2012, dkt. 128, ["Jon Decl."], ¶9.) As a result, time and payroll records fail to address the issue at hand, as they add nothing to establish Defendant's liability or measure Plaintiffs' damages. Though there was a period when employees were instructed to sign rest break logs indicating when they took breaks, they were rarely, if ever, accurate and the practice was discontinued shortly after it began. (*Id.*) Class member Philip Chung estimates that the rest break log he and his teammates were instructed to fill out "was accurate only about half the time." (Compendium of Decl., filed Nov. 2, 2012, dkt. 150-1, Ex. 48, ¶7.) Accordingly, Plaintiffs' plan to calculate damages by examining time and payroll records is entirely arbitrary.

Plaintiffs have argued that time and payroll records are relevant because they show which employees worked shifts between 3.5 and 4 hours in length, or over 6 hours in length, because this

indicates a "potential violation." (Phillips Decl., dk. 106, p. 2.) However, as Defendant's expert, Dr. Ali Saad, explained, "[t]he key word of course is 'potential,' since there is no requirement for AutoZone employees to clock out for paid rest breaks." (*See* Saad Decl., filed Nov. 2, 2012, dkt. 131, ¶25.) In essence, Plaintiffs' expert proposes a loose plan for approximating potential class members, but offers no insight into how damages may be measured across the class. This is particularly true in light of *Brinker*, which imposes liability only where an employer knew or should have known that an employee was working through a rest break. *Brinker,* 53 Cal. 4th at 1040, n.19. Plaintiffs' proposed trial plan is thus far removed from measurement of rest break violations because time and payroll records do not address the most important factor in determining AutoZone's liability: knowledge.

Even using rational inferences, Plaintiffs' model falls short: "even if one were to pursue the analysis of [Plaintiffs' expert], not every shift identified by [Plaintiffs' expert] would constitute a rest break violation." (Saad Decl., dkt. 131, ¶25.) This is because, "[n]ot every employee who is scheduled to work a 4-hour shift, for example, will always work exactly 4 hours." (*Id.*) In reality, employees often clock in or out several minutes early or late. As a result, an employee who is scheduled to work 4 hours but whose records show only worked 3.95 hours, was very likely scheduled to work a 4-hour shift, but happened to clock in a few minutes late or out a few minutes early, or both. (*See id.*) It is far more rational to assume that this individual's manager treated the employee as if they were working a 4-hour shift and were thus entitled and permitted to take a rest break, than to assume, as Plaintiffs' methodology does, that the individual was denied a break because they did not work at least 4 hours. Accordingly, under *Comcast*, Plaintiffs have not identified a reliable way to measure damages across the class.

A recent case out of the Central District is instructive. *Forrand,* 2013 U.S. Dist. LEXIS 62252, *7. In *Forrand*, the plaintiffs argued that they could measure the employer's damages for failing to pay employees for time worked off the clock by calculating the time between each employee's clock-in and clock-out times, as compared to the length of the shift they were scheduled to work. Thus, the plaintiff's proposed class wide method of proof "turn[ed] on whether '[c]locking in on a time clock necessarily means that the employee is under the control of the employer.'" 2013

U.S. Dist. LEXIS 62252, *7-8. As the court recognized, "[i]t does not." *Id*. at *8. Clocking in and clocking out are relevant to the issue, but not dispositive, "and standing alone, do not prove that an employee must be paid for the time spent off-the-clock but outside of the employee's scheduled start time." *Id*. In other words, it is possible to measure the time between clock-in and clock-out times across the class. However, these measurements are not tied to the employer's liability because this does not *necessarily* mean they were "prevented from using 'the time effectively for [their] own purposes.'" *Id*. at *7, citing *See's Candy Shopps, Inc. v. Super. Ct.*, 210 Cal. App. 4th 889, 910 (2012).

Similarly, it is possible to look at Defendant's time and payroll records to determine the total number of hours an employee worked on a given day, as Plaintiffs propose, but this does not establish Defendant's liability on the rest break claims. Just as clock-in and clock-out records do not prove whether or not an employee was prevented from using any time for their own purposes during an entire time period, looking at clock-in and clock-out records does not prove whether or not an employee was prevented from taking a rest break when they worked shifts between 3.5 and 4 hours or 6 and 8 hours in length. Plaintiffs fail to identify a way to bridge these differences, and thus their methodology does not pass muster under the *Comcast* standard. As Dr. Saad recognized, "[h]ow one would with any confidence determine whom among the thousands of class members were not allowed to take rest breaks, and with what frequency, is unclear. There are no data that bear on the issue." (Saad Decl., dkt. 131, ¶26.)

"Even at the class certification stage, a plaintiff must demonstrate a damages methodology that has some potential to reasonably assess damages." *Ginsburg v. Comcast Cable Communications*, 2013 U.S. Dist. LEXIS 55149 at *24 (W.D. Wash. Apr. 17, 2013). The *Ginsburg* case concerned a putative off-the-clock class. Though the plaintiffs had offered statistical analyses of the time between each employee's clock-in and clock-out times, they could not translate that data into a calculation of the time the employees worked off-the-clock. The court posited that this was largely because there was no "uniform act," that would indicate when the employee was on the clock and when the employee was off the clock. The plaintiffs offered evidence that employees began working for the employer when they turned on their computers, but there was also evidence that

some employees did this and then continued to use the computer for personal business. Thus, there was no uniform act, and each class member's damages would require individualized proof.

There is no uniform act here either. As AutoZone's Divisional Human Resources Manager, Carlos Jon, explained in his uncontroverted declaration, "AutoZone rest break practices and procedures are highly variable between stores," and they are established by store managers at the store level. (Jon Decl., dkt. 128, ¶¶5,9.) Indeed, AutoZone's written policy states that employees who work four hours are provided one rest break. Yet, as Jon testified, "[i]t is the expectation that at California stores, AutoZoners will take rest breaks every two hours." (Jon Decl., dkt. 128, ¶9.) The 117 declarations Defendant submitted in support of its Opposition to Plaintiffs' Motion for Class Certification also support this, and they show that some people routinely take rest breaks, some do not, and the reasons vary. (*See, e.g.*, Compendium Decl., dkt. 145, Solorio Decl. No. 214, ¶3 (takes her first rest break two hours into work and her second rest break two hours after lunch); Stein Decl. 216, ¶10 (schedules his own rest breaks, usually two hours after his shift starts and two hours after lunch).) Class member Mark Cervantes usually takes all of his rest breaks, but if he does not, it is because he forgot or chose not to, not because he was prevented from doing so. (Compendium Decl., dkt. 136, Cervantes Decl. No. 42, ¶¶5-6).

In addition, even though some stores implemented the practice of recording rest breaks for a brief time, there is also evidence that employees sometimes recorded a rest break when they did not actually take one and some took rest breaks without actually recording them. (*See, e.g.*, dkt. 136, Cervantes Decl. No. 42, ¶7 (he and his teammates sometimes forgot to fill out the rest break log); dkt. 145, Terrones Decl. No.218, ¶8 (she did not always write down the start and stop times in the rest break log and as far as she knows, her teammates did the same).) In fact, because of the lack of a uniform act, the location and manager-dependent nature of Plaintiffs' claims necessarily destroys Rule 23(b)(3) predominance. *Smith v. Family Video Movie Club, Inc.*, 2013 U.S. Dist. LEXIS 54512 at *35 (N.D. Ill. April 15, 2013). Plaintiffs in this case, just like the plaintiffs in *Ginsburg*, "suggest no analysis that would translate that data into a viable damages calculation." Accordingly, common questions do not predominate.

Plaintiffs' proposed methodology neither measures damages on a class-wide basis, nor ties

such damages to Defendant's alleged wrong-doing. Consequently, Plaintiffs' damages model is not consistent its liability and it necessarily fails under *Comcast*.

2. **Under *Wang*, AutoZone's Allegedly Uniform Rest Break Policy Is Insufficient To Satisfy The Predominance Requirement of Rule 23(b)(3).**

In the Order, the Court stated that "claims based on a uniform policy are entitled to class certification" and "there was no dispute" that Defendant had a uniform rest break policy. (*See* Order at 12:13-14, 13:19-20; s*ee also id.* at 14:7-9 ("[b]ecause this subclass's claims are based entirely on the legality of Defendant's uniform written rest break policy, the Court concludes that common questions predominate").) *Wang v. Chinese Daily News* stands at odds with this conclusion. In fact, a uniform rest break policy, alone, is insufficient to satisfy the predominance requirements of Rule 23(b)(3), under *Wang* and *Comcast*. This is especially true in light of the California Supreme Court's holding in *Brinker* that employers are only required to "authorize and permit" rest breaks, not ensure they are taken.[1]

Under *Brinker*, employers are not required to ensure employees take rest breaks. Instead, employers must merely authorize and permit rest breaks in accordance with the applicable Wage Orders. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1017 (2012). An employer is liable for missed rest (and meal) breaks only when it "knew or reasonably should have known that the worker was working through the authorized meal period." *Id.* at 1040 n.19.

Relying on *In re: Wells Fargo Home Mortg.*, 571 F.3d 953 (9th Cir. 2009), and *Vinole v. Countrywide Home Loans*, Inc., 571 F.3d 935, 944-48 & n.14 (9th Cir. 2009), *Wang* stands for the proposition that the existence of a uniform policy classifying all employees in a particular job title as exempt employees does not necessarily mean common questions predominate. As the *Wang* court explained, "such a presumption 'disregards the existence of other potential individual issues that may make class treatment difficult if not impossible.'" *Wang*, 2013 U.S. App. LEXIS at *13, citing *In re Wells Fargo*, 571 F.3d at 959. While AutoZone argued that the holdings and rationale of *In re: Wells Fargo* and *Vinole* should be applied in the context of rest breaks in its Opposition to Plaintiff's

---

[1] To the extent the *Brinker* decision can be read to the contrary, it was decided under California state procedural rules, which under the *Erie* doctrine, do not apply in this Court.

(CASE NO. 3:10-MD-02159-CRB)        8.        MOTION FOR RECONSIDERATION

Motion for Class Certification, there was no controlling law definitively stating that it could be applied <u>outside</u> of the misclassification context. However, there is now, with the *Wang* decision.

The *Wang* opinion gives specific direction to the lower court to reconsider its Rule 23(b)(3) determination in light of both the *In re: Wells Fargo* and *Vinole* cases, as well as the California Supreme Court's holding in *Brinker*. Since an employer's liability for compensation depends on whether it knew or reasonably should have known that an employee was working through the authorized break, the existence of a uniform policy (whether it provide or prohibit rest breaks) is not actually probative of an employer's liability, since it does nothing to establish an employer's knowledge. *Wang*, 2013 U.S. App. LEXIS, at *14.

A facially valid rest break policy does not necessarily mean that an employer is providing rest breaks according to the law. As the *Wang* court explained, the employer could be using or creating incentives to forgo breaks. *See id.* Thus, just as a predominance finding is inappropriate solely because of the existence of a written, uniform policy in making a determination under Rule 23(b)(3) in the misclassification context, it is also improper to do with regards to an allegedly uniform policy regarding rest breaks. *See Wang*, 2013 U.S. App. LEXIS, at *11-15; s*ee also* Order Granting in Part Motion for Class Certification and Denying Motion to Seal, *Portillo v. Kellermeyer Building Svcs.*, Case No. RG11 558695, Alameda Superior Court (March 26, 2013) (Brick, J.) ("Although there is evidence of a facially defective policy that was communicated to all employees and some evidence that some training occurred, there is little evidence of how the policy was understood and applied by lower-level managers and no evidence that it was consistently applied to a substantial number of class members."[2]).

Like the plaintiffs in *Portillo*, Plaintiffs have offered no evidence that AutoZone's rest break policy was consistently applied to a substantial number of class members, and, in fact, the evidence suggests otherwise. Store managers are responsible for establishing rest break practices store by store. (Jon Decl., ¶9.) And, AutoZone offered 117 declarations of putative class members who were

---

[2] While a state court decision is not binding on this Court, it can be persuasive. *See MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 489 n.5 (9th Cir. 1979).

provided first and second rest breaks when working over 3-1/2 or 6 hours. In addition, AutoZoners are not prohibited from taking rest breaks when they work shifts of less than 4 hours or between 6 hours and 8 hours in length. (*Id.*) In contrast, Plaintiffs have offered only their own contradictory testimony that they, personally, (a total of just three individuals) were sometimes not permitted or authorized to take a first rest break when they worked longer than 3-1/2 hours in length (Declaration of Lynnetta Ellison, dkt. 95-8, p. 1:25-28), or a second rest break when working shifts between 6 and 8 hours in length (Declaration of Jimmy Ellison, dkt. 95-6, p. 2:12-20; Declaration of William Doland, dkt. 95-7, p. 2:11-18).

### 3. *Wang* and *Comcast* establish that a methodology that relies on the existence of a uniform rest break policy does not meet the predominance requirements of Rule 23(b)(3).

Pursuant to *Comcast*, proponents of class certification must show (1) that the existence of individual injury resulting from the alleged violation was "capable of proof at trial through evidence that [was] common to the class rather than individual to its members;" and (2) that the damages resulting from the injury were measurable "on a class-wide basis" through the use of "common methodology." *Comcast*, at *1430. A uniform written policy may constitute evidence common to an entire class, but it does not establish that damages are measurable on a class-wide basis. Thus, even if the existence of a uniform policy did establish common questions, the Court's analysis here would still be insufficient under *Comcast* because the Court did not go beyond the policy to consider whether the *damages* could be measured on a class-wide basis.

Again, *Forrand v. Fed. Express Corp.*, is illustrative of this point. 2013 U.S. Dist. LEXIS 62252. In *Forrand*, the court was faced with a proposed class of employees who allegedly were required to work through meal and rest breaks. The plaintiff relied on the following to argue that certification is appropriate under Rule 23(b)(3): (1) her own testimony stating that she could not recall ever receiving an uninterrupted 30 minute lunch break, (2) a declaration from a former FedEx manager of two locations, (3) testimony of a former FedEx employee who claims he was required to work through unpaid meal breaks, and (4) analysis of data purporting to show that 23.1 percent of unpaid breaks were interrupted by work events. *Id.* at *14-15. However, this evidence was insufficient to establish predominance because although the method of proof was applicable to the

class as a whole, it did not adequately tie the plaintiff's allegations to "a proper and reliable measure of damages for work done during those breaks." *Id.* at *15. This was particularly so because she would need to prove that the employer "knew or reasonably should have known that the worker was working through the authorized meal period," under *Brinker*. *Id.* at *15.

The analysis in *Forrand* applies in much the same manner here. Plaintiffs in this case have similarly offered only testimony and a summary of the time records, with no explanation of how the data can be extrapolated to establish damages, much less liability, on a classwide basis, particularly in light of the lack of uniformity of application of the rest break policy and varying individual practices among stores and putative class members. Just as the plaintiff in *Forrand* attempted to rely on her own testimony and a brief analysis to establish predominance, the Plaintiffs in this case have too. In fact, out of all of the declarations Plaintiffs submitted in support of their Motion for Class certification, only the named Plaintiffs' declarations mention rest breaks. This certainly does not go far to establish predominance, and Plaintiffs have offered no other reliable measure of damages. Accordingly, the rest break subclass fails to meet the predominance requirement.

## IV. CONCLUSION

Defendant respectfully requests leave to file a motion for reconsideration of the portion of the Court's Order finding that Plaintiffs' rest break subclass meets the requirements of Federal Rule of Civil Procedure 23(b)(3).

Respectfully submitted,

Dated: May 23, 2013

By: /s/ Michael E. Brewer
MICHAEL E. BREWER
ANNE-MARIE WAGGONER
GREGORY G. ISKANDER
JOHANNA R. CARNEY
Littler Mendelson, P.C.
Attorneys for Defendant
AUTOZONE, INC.