UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re: AUTOZONE, INC., WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION,

Case No. 10-md-02159-CRB   (JSC)

**ORDER RE: DISCOVERY DISPUTE**

Re: Dkt. No. 258

This matter has been referred to the undersigned magistrate judge for the purposes of discovery.  (Dkt. No. 42.)[1]  Presently before the Court is a joint discovery letter concerning Defendant's request for an order compelling Plaintiffs to disclose the identities of the class members who responded to a telephone survey that Plaintiffs' expert conducted.  (Dkt. No. 258.)  The question is whether Plaintiffs' expert can rely on class members' factual statements about missed rest breaks to prepare a report regarding Defendant's liability and the class-wide damages for missed rest breaks, while at the same time withholding from Defendant the identities of the class members making those statements.  Having reviewed the parties' submissions, and having had the benefit of oral argument on May 12, 2016, the Court concludes that Plaintiffs cannot as the survey respondents were not promised confidentiality.

**BACKGROUND**

The district court certified a class on Plaintiffs' rest break claims.  (Dkt. No. 174.)  On April 8, 2016, Plaintiffs produced an expert report from C. Paul Wazzan, Ph.D., of the Berkeley Research Group, LLC, who conducted a survey of a sample of the 21,000-plus class members

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated numbers at the top of the documents.  ECF docket numbers throughout refer to the consolidated MDL docket, unless a case number for a particular case is provided.

regarding the implementation of Defendant's rest break policies and procedures. In particular, Dr. Wazzan determined that a telephone survey was "the best method to estimate the frequency with which rest breaks were taken," and thus determine class-wide damages. (Dkt. No. 262 at 8.) According to Plaintiffs, the class member survey respondents were advised that "their identities would be protected." (Dkt. No. 258 at 12.) Plaintiffs produced the databases that Dr. Wazzan used to prepare his report, but refused to produce the survey respondents' identities on the grounds that such disclosure is prohibited because "confidentiality of survey respondents' identities is an accepted best practice among survey administrators and protects the integrity of the survey[,]" and Defendant can impeach the survey's reliability by attacking Dr. Wazzan's methodology, not through cross-examination of the respondents themselves. (Dkt. No. 258 at 8.)

## DISCUSSION

The Federal Rules of Civil Procedure require an expert witness to disclose "the facts or data considered . . . in forming [the expert's opinions]." Fed. R. Civ. P. 26(a)(2)(B). The Rules also provide that "[p]arties may obtain discovery regarding any nonprivileged matter" where the discovery is relevant and proportional. Fed. R. Civ. P. 26(b)(1). A party may seek a protective order to prevent disclosure of, among other things, trade secrets or other confidential research, development, or commercial information. Fed. R. Civ. P. 26(c)(1)(G). The party resisting discovery must establish that the information sought is kept confidential and demonstrate that its disclosure might be harmful. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (citations omitted).

Plaintiffs have not met their burden of showing that the class members were promised confidentiality. Notwithstanding Plaintiffs' assertion in the joint discovery letter brief, Dr. Wazzan's report makes no mention of any confidentiality promises to the class member survey respondents. For example, in his discussion regarding the survey design and administration he never states that respondents were advised that their identities would remain confidential. (Dkt. No. 258 ¶¶ 18-20.)

Even more dispositive, in his report Dr. Wazzan represents that a "full and correct copy of the survey read to participants is attached as Supplemental Exhibit C," and that "the details behind

the administration of the survey" are in Supplemental Appendix D. (*Id.* at ¶ 20.) The "full and correct copy" of the survey read to participants does not mention a word about confidentiality; instead, the respondent class members are told that the "information [they] provide will be used in connection with this lawsuit." (*Id.* at 60.) The "details behind the administration of the survey" also do not mention anything about respondents being advised that their responses will be anonymous. (*Id.* at 67-69.) Thus, unless the expert report is wrong, the class member survey respondents were not advised that their responses would be confidential.

Plaintiffs' objection to identifying the survey respondents is premised on their erroneous assertion that the respondents were promised confidentiality. Plaintiffs' argue: "If AutoZone is allowed to cross-examine the survey respondents—who thought that their responses would be kept confidential—the entire survey process will be compromised." (Dkt. No. 258 at 9.) Plaintiffs also cite the Federal Judicial Center's Reference Manual of Scientific Evidence (3d ed. 2011) for the proposition that the "purpose of confidentiality is to increase participation rates and encourage candid responses—thus enhancing the survey's accuracy." (*Id*.) It goes without saying that if the survey taker does not advise the class member that the responses will be kept confidential such "secret" confidentiality will not impact response rates nor accuracy. Plaintiffs' objection to identifying the class member survey respondents is thus OVERRULED.

The Court is dismayed, however, that this critical fact—that the expert report did not support Plaintiffs' assertion that the class member survey respondents were promised confidentiality—was not raised by Defendant until oral argument. If the parties had engaged in a competent meet and confer process the issue would have been spotted before ever being brought to the Court's attention. It is evident that neither side even bothered to carefully read the expert report before filing the joint discovery letter brief; indeed, they did not even attach it to the joint letter brief. The Court expects that in the future the parties will take more seriously their obligation to thoroughly understand each side's position before filing a discovery dispute.

Finally, there is the issue of what Defendant will do with the identities of the survey respondents. Defendant is directed to meet and confer with Plaintiffs to devise a process that is as inconvenient to the class member respondents as possible. They did not submit declarations;

instead, they merely answered a telephone survey.  Perhaps Defendant can likewise conduct brief telephone depositions of a sample of the respondents.  If the parties are unable to agree to a process after they have exhausted good faith meet and confer efforts (which must at a minimum include telephone communications—email alone is never sufficient), then they should contact the Court's Courtroom Deputy to set a status call with the Court.

This Order disposes of Docket Number 258.

**IT IS SO ORDERED.**

Dated:  May 16, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge